1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   MARK L. BOISJOLIE,

8        Plaintiff,                        NO.  CV-12-00334-JLQ

9   v.                                     MEMORANDUM OPINION AND
                                           ORDER RE:  MOTIONS FOR
10  CAROLYN W. COLVIN,                     SUMMARY JUDGMENT
    Commissioner of Social Security[1],
11
         Defendant.
12

13        BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF

14  NO. 20 & 21).  Plaintiff is represented by attorney **Maureen J. Rosette**.

15  Defendant is represented by Assistant United States Attorney **Pamela J. DeRusha**

16  and Special Assistant United States Attorney **David J. Burdett**.  This matter was

17  previously assigned to Magistrate Judge Imbrogno.  It was reassigned to the

18  undersigned for all further proceedings on August 7, 2013.  The court has

19  reviewed the administrative record and the parties' briefs.  The case was submitted

20  for decision without oral argument on August 8, 2013.

21        This court's role on review of the decision of the Administrative Law Judge

22  (ALJ) is limited.  The court reviews that decision to determine if it was supported

23  by substantial evidence and contains a correct application of the law.  *Valentine v.*

24  _____

25        [1]Carolyn W. Colvin became the Acting Commissioner of Social
    Security on February 14, 2013.  Pursuant to Rule 25(d) of the
26  Federal Rules of Civil Procedure, Ms. Colvin is substituted for
    Michael Astrue as the Defendant in this suit.  No further action
27  need be taken to continue this matter by reason of the last
    sentence of 42 U.S.C. 405(g).
28

ORDER - 1

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9ᵗʰ Cir. 2009).  This court is obligated to affirm the ALJ's findings if they are supported by the evidence and the reasonable inferences to be drawn therefrom.  *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9ᵗʰ Cir. 2012).  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

## I.  JURISDICTION

In February 2009, Plaintiff/Claimant Mark Boisjolie, then 48 years of age, filed an application for disability insurance benefits alleging a disability onset date of March 2, 2007. (ECF No. 11, p. 154-160).  Plaintiff alleged at the time of application an inability to work due to lower back pain, sleep apnea, and depression.  His application was denied initially and on reconsideration.  After timely requesting a hearing, a hearing was held before Administrative Law Judge Marie Palachuk  on April 21, 2010. (Transcript at ECF No. 11-2 pages 42-78).  The ALJ issued a decision denying benefits on May 26, 2010. (ECF No. 11-2, p. 17-34).  Plaintiff filed a request for review with the Appeals Council, which was denied on April 4, 2012.  The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II.  SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is, benefits are denied.  If he is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform his previous work, he is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921

1   (9th Cir. 1971).  The initial burden is met once a claimant establishes that a

2   physical or mental impairment prevents him from engaging in his previous

3   occupation.  The burden then shifts to the Commissioner to show (1) that the

4   claimant can perform other substantial gainful activity and (2) that a "significant

5   number of jobs exist in the national economy" which claimant can perform.  *Kail*

6   *v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

7                                   **III.  STANDARD OF REVIEW**

8           "The [Commissioner's] determination that a claimant is not disabled will be

9   upheld if the findings of fact are supported by substantial evidence and the

10  [Commissioner] applied the proper legal standards."  *Delgado v. Heckler*, 722

11  F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is

12  more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th

13  Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599,

14  601-602 (9th Cir. 1989).  "It means such relevant evidence as a reasonable mind

15  might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402

16  U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as

17  the [Commissioner] may reasonably draw from the evidence" will also be upheld.

18  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court

19  considers the record as a whole, not just the evidence supporting the decision of

20  the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).   This

21  court may set aside a denial of benefits only if the basis for denial is not supported

22  by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278

23  F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to

24  resolve conflicts in the evidence.  *Richardson*, 402 U.S. at 400.  If the evidence

25  supports more than one rational interpretation, the court must uphold the decision

26  of the ALJ.  *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

27

28

## IV.  STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and the ALJ's decision, and are only briefly summarized here.  At the time the ALJ issued her decision, Plaintiff was 50 years old.  Plaintiff has a high school education.  Plaintiff's primary work history was as a retail cashier at a 7-11 convenience store from approximately 2001 to 2005, and doing plastic injection molding at Keytronic from 1993 to 1998.

At the time of hearing, Plaintiff was six feet tall and weighed approximately 269 pounds.  Plaintiff is divorced with one 11-year-old child, who does not live with him.  Plaintiff attempted a vocational rehabilitation program where he worked at Goodwill between November 2008 and January 2009.  During that program his work quality was described as "good" and he was able to learn tasks in a timely manner. (ECF No. 12, p. 319).  He was able to interact well with others.  He was scheduled for four hours of work per day due to his lower back pain.  The primary barrier to his returning to work was identified as his unreliable attendance.

## V.  COMMISSIONER'S FINDINGS

The ALJ found at **Step 1** that Plaintiff had not engaged in substantial gainful activity since March 2, 2007, the alleged onset date.  The ALJ found Plaintiff did have some minimal earnings in 2008, but it did not rise to the level of substantial gainful activity.

At **Step 2**, the ALJ found the medical evidence established the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the facets, sleep apnea, and morbid obesity. (ECF No. 11-2, p. 22).

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)). The ALJ found that Plaintiff's back symptoms did not meet listing 1.04A or

1.04B.  The ALJ also found that Plaintiff's sleep apnea did not meet listing 3.10.

At **Step 4**, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and found that Plaintiff could perform his past relevant work as a cashier/checker and injection molding machine tender. (ECF No. 11-2, p. 28).

The ALJ did not reach **Step 5**, having concluded at Step 4 that Plaintiff could perform his past relevant work.

## VI. ISSUES

Plaintiff's briefing raises two primary contentions for review: 1) that the ALJ erred in concluding at Step 2 that Plaintiff did not have any severe mental impairments, and 2) that the ALJ did not properly consider or reject the opinion of Dr. Rosekrans (ECF No. 20, p. 8-12).  Plaintiff's briefing contains other vague complaints about how the ALJ evaluated and weighed the medical evidence, and the also vague assertion that Plaintiff "further believes that he is more limited from a physical standpoint." (ECF No. 20, p. 8).

## VII. DISCUSSION

### A.  **Did the ALJ err at Step 2 in Concluding that Plaintiff did not have any Severe Mental Impairments?**

The Step Two analysis is, "a de minimus screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  An impairment or combination of impairments may be found non-severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (emphasis in original).   The Ninth Circuit has cited favorably to Social Security Regulation No. 85-28(1985) which provides, "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687.

The ALJ found Plaintiff's "mild depression" to be "nonsevere". (ECF No. 11-2, p. 23).  The ALJ observed that Plaintiff did not have limitations in his activities of daily living.  He was able to live alone and complete his personal care.  He had a girlfriend, engaged in social activities, and during his trial work experience at Goodwill was noted to interact well with others.  The ALJ also relied on the opinion of evaluating psychologist Dave Sandford, PhD, who found Plaintiff's depression to be non-severe.  Dr. James Bailey, PhD, was in agreement with Dr. Sandford. (ECF No. 11-2, p. 24).

The medical record as a whole does not support a finding that Plaintiff had severe impairments of depression or anxiety.  When being interviewed for his Disability Report in January 2007, Plaintiff answered that he had not seen any doctor/hospital/clinic or anyone else for emotional or mental problems that limited his ability to work. (ECF No. 11, p. 175).  In a March 2009 function report, Plaintiff stated that he "tend[s] to fall in and out of depression." (ECF No. 11, p. 217).  In another Disability Report, Plaintiff indicated that his depression started in 2009 when he was unable to find suitable work. (ECF No. 11, p. 234).  There are scant records evidencing a history of mental health treatment.  In October 2007, while seeing Nurse Practitioner Miller, Plaintiff arrived at the office visit with a "paper off the internet with diagnosis of fibromyalgia.  He says that is what I have." (ECF No. 12, p. 350).  Miller did not agree, but she was concerned about depression and put him on a trial of Cymbalta.

Dr. Sandford in a psychological review in April 2009, found Plaintiff had no severe mental impairments. (ECF No. 12, p. 387).  In a May 2009 office visit, Plaintiff expressed complaints of anxiety to his Nurse Practitioner and she gave him "just a few lorazepam." (*Id*. at 410).  In December 2009, Dr. Rosekrans, PhD, performed a psychological examination and concluded that Plaintiff had moderate depression. (*Id*. at 433).  Dr. Rosekrans' conclusion is really the only evidence of

record which could support a finding that Plaintiff's depression met the Step 2 requirement, but as explained *infra*, the ALJ gave adequate reasons for rejecting the opinion of Dr. Rosekrans.

There is a dearth of evidence supporting a conclusion that Plaintiff has a severe mental health impairment.  There is no evidence of a course of mental health counseling in the record.  Plaintiff indicated in 2007, that he was not receiving treatment, and that his depression started in 2009.  However, when seen and examined in September 2010, by Dr. John Arnold, PhD, Plaintiff still was not receiving mental health services. (ECF No. 12, p. 509).  Further, Dr. Arnold's testing suggested "an invalid profile due to over reporting of negative symptoms." (*Id.* at 511).  The record reflects that on occasion over the years Plaintiff would complain of anxiety or depression at an office visit, and was given a trial of Cymbalta and then at a later visit a few lorazepam.  Complaining of depression or anxiety on a few occasions over the years, and receiving trial doses of antidepressants or anti-anxiety medication does not establish a severe impairment. Plaintiff has not demonstrated his alleged mental impairments affected his ability to work.  Plaintiff has the burden of proof at Step 2, and even though that burden is *de minimus*, Plaintiff has failed to meet it.  There is no indication that Plaintiff has mental impairments that affect his ability to work.

## B.  Did the ALJ properly consider and reject the opinion of Dr. Rosekrans?

At the hearing before the ALJ, Dr. Thomas McKnight, a board-certified clinical psychologist was called to testify.  He had not examined or treated Plaintiff, but had reviewed the medical record.  He concluded that Dr. Rosekrans' opinion was not well-supported.  In fact, Dr. McKnight stated, "there's absolutely no basis" for Dr. Rosekrans conclusions based on the evaluation conducted. (ECF No. 11-2, p. 55).  He further concluded that "Dr. Rosekrans' idea of what

ORDER – 8

[Plaintiff] can't do is inconsistent with the reality of the job [Plaintiff] displayed."
(*Id.* at 57).  This conclusion was based on the positive social interactions Plaintiff
displayed during his vocational rehab placement at Goodwill.  Based on his review
of the record, Dr. McKnight concluded it was "unclear" that Plaintiff had "any
psychiatric disorder". (*Id*. at 57).

The ALJ considered the opinion of Dr. Rosekrans.  The ALJ noted that Dr.
Rosekrans had not reviewed any of Plaintiff's medical records. (ECF No. 11-2, p.
24).  Further, Dr. Rosekrans did not observe symptoms of depression during the
examination. (ECF No. 11, p. 24; ECF No. 12, p. 433).  The ALJ found that, "the
opinion of Dr. Rosekrans is not consistent with the medical record, which shows
the claimant does not have any social limitations, and his opinion is inconsistent
with his own objective mental status testing, which shows the claimant does not
have cognitive difficulties." (ECF No. 11-2, p. 25).  The ALJ found Dr.
McKnight's testimony to be consistent with the medical record which showed that
claimant's depression was mild. (*Id*.)

The ALJ gave clear and convincing and specific and legitimate reasons for
rejecting the opinion of Dr. Rosekrans.  This court also agrees that Dr. Rosekrans'
conclusion is inconsistent with the medical record as a whole.

## C.  Issues Pertaining to Physical Limitations or RFC

The court has addressed the only two issues properly framed for review.
However, Plaintiff also makes comments about his physical condition, that he was
"more limited" than the ALJ found, and that the conclusion that he could return to
his past relevant work is incorrect because the ALJ should have found he was only
capable of sedentary work.  The ALJ found that Plaintiff's testimony about the
"intensity, persistence, and limiting effects" of his symptoms was not credible.
(ECF No. 11-2, p. 26).  Plaintiff has not challenged that finding.  In regard to
Plaintiff's sleep apnea, the ALJ found that the sleep study demonstrated that the

CPAP (Continuous Positive Airway Pressure) machine was successful in eliminating most of the sleep disturbance episodes caused by Plaintiff's sleep apnea. (*Id.* at 27). That finding is supported by the record. (ECF No. 12, p. 397-98).

The ALJ further observed that Plaintiff had recently worked during his vocational rehabilitation, that the primary barrier to employment was attendance, and "claimant missed work many times during his 2 month trial work experience due to many factors not related to his back pain, including a death in the family, not knowing he was scheduled, having a housing appointment, calling in due to ear pain, poor weather conditions on several occasions, and for a job interview." (ECF No. 11-2, p. 27). The ALJ explained that she found the opinions of Dr. Coolidge and Dr. Staley convincing, and the opinion of Debra Miller, ARNP, upon which Plaintiff relies, was given little weight. Ms. Miller is a Nurse Practitioner, which is not an acceptable medical source. *Betts v. Colvin*, 2013 WL 3157434 (9th Cir. 2013)(nurse practitioner is an "other source" rather than an "acceptable medical source" and ALJ need only give germane reasons for discounting her opinion). The ALJ was also not impressed with Miller's checkbox form evaluation, and found it inconsistent with claimant's statements concerning his lifting abilities. See *Bell-Shier v. Astrue*, 312 Fed.Appx. 45, 48 n.3 (9th Cir. 2009)("Medical reports presented in such summary check-box format without additional explanation are not entitled to significant weight.").

It is the role of the ALJ to assess credibility and weigh the evidence, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## VIII. CONCLUSION

The Commissioner's and ALJ's decision is supported by substantial

evidence in the record and is based on proper legal standards. It must therefor be affirmed. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 21) is **GRANTED.**

3. The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 27th  day of August, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
